IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

SEFU AND AZABASHA UHURU,          )
                                  )
     Plaintiffs,                  )
                                  )
vs.                               )          No. 08-2150-V
                                  )
                                  )
CITY OF MEMPHIS; MEMPHIS POLICE )
DEPARTMENT, a division of the    )
City of Memphis; LARRY GODWIN,   )
individually and in his          )
official capacity as Director    )
of the Memphis Police            )
Department; MICHAEL MCCORD,      )
individually and in his official)
capacity as a Memphis Police     )
Department Officer; STEVEN       )
GRISBY,individually and in his   )
official capacity as a Memphis   )
Police Department officer; and   )
WILLIAM GRAY, individually and   )
in his official capacity as a    )
Memphis Police Department        )
Officer,                         )
                                  )
     Defendants.                  )

_____

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
RULE 12(b)(6) MOTIONS TO DISMISS

_____

Before the court are two related motions: (1) the April 15,

2008 motion of the defendant, the City of Memphis ("the City"), to

dismiss all claims against it, the Memphis Police Department

("MPD") and the other defendants in their official capacities,

(Doc. No. 11), and (2) the June 6, 2008 motion of defendant Larry

Godwin, Director of the MPD ("Director Godwin"), to dismiss all

claims against him individually for failure to state a claim (Doc. No. 26). Both motions are brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiffs, Sefu and Azabasha Uhuru ("the Uhurus"), have filed a response in opposition to both motions, and the City has filed a reply to the Uhurus' response to its motion. For the reasons stated below, the City's motion is granted in part and denied in part, and Director Godwin's motion is granted.

## I.  ALLEGATIONS IN THE COMPLAINT

The Uhurus filed the present action pursuant to 42 U.S.C. § 1983 ("Section 1983" or "§ 1983") against the City, the MPD, and against Director Godwin, Lt. Michael McCord, Officer Steven Grigsby, and Officer William Gray, individually and in their official capacities (all collectively "the Defendants"). The complaint alleges that Officers Grigsby and Gray attacked the Uhurus on May 30, 2007, at their beauty salon in Memphis, Tennessee. (Compl. ¶ 8.) It alleges that Officers Grigsby and Gray were verbally and physically abusive to two men waiting to go with the Uhurus to a play rehearsal. (Compl. ¶¶ 9-12.) After Mr. Uhuru tried to explain the situation, Officer Grigsby allegedly attacked him from behind, with Officer Gray later joining in. (Compl. ¶¶ 14-15.) The complaint further alleges that Officer Gray pepper-sprayed the Uhurus, punched them, and ripped out fourteen braids of Mrs. Uhuru's hair. (Compl. ¶¶ 17-19.) When Lt. McCord

arrived on the scene, he purportedly began to use racial slurs and threats and ordered the Uhurus be arrested. (Compl. ¶¶ 20-21.) The complaint further states that the Uhurus were detained in the backseat of a squad car for approximately two and one half hours, that Mr. Uhuru was transported to the Shelby County Jail, booked and processed, and Mrs. Uhuru was transported to Jail East, then a medical facility, released, and cited for a misdemeanor. (Compl. ¶¶ 21-23.) The Uhurus' complaint states that any and all criminal charges against them have been dismissed. (Compl. ¶ 26.)

The Uhurus' complaint further alleges that Lt. McCord, Officer Grigsby, and Officer Gray are part of a "Strike Force" within the MPD that regularly targets African-American citizens based solely on their race. (Compl. ¶ 27.) It also alleges that Director Godwin, the City, and the MPD failed to adequately screen applicants, train officers, and investigate and discipline officers such as Lt. McCord, Officer Grigsby, and Officer Gray. (Compl. ¶¶ 29-31, 41, 46.) The Uhurus assert that the Defendants have violated their Eighth and Fourteenth Amendment rights and committed acts of false imprisonment and aggravated assault. They further claim that they sustained significant physical and mental anguish, pain, and suffering, and they seek both compensatory and punitive damages.

The City's current motion seeks to dismiss the following claims: (1) all claims against the MPD and Director Godwin, Lt.

McCord, Officer Grigsby, and Officer Gray in their official capacity; (2) any § 1983 claims based on respondeat superior liability; (3) any § 1983 claims based upon ratification of the alleged misconduct; (4) all § 1983 claims made under the Eighth Amendment; (5) all § 1983 claims made under the Fourteenth Amendment; (6) all claims under Tennessee law for false imprisonment and aggravated assault; and (7) all claims for punitive damages. Director Godwin's motion seeks to dismiss all claims against him individually.

## II. ANALYSIS

The United States Supreme Court has recently reiterated the standard for courts to adhere to when considering a motion pursuant to FED. R. CIV. P. 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citations omitted], a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal § 1216 pp 235-236 (3d. Ed. 2004) . . . ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")[footnote omitted], on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). When

considering a motion to dismiss for failure to state a claim, the court must assume that all of the well-pleaded factual allegations in the complaint are true and must construe those facts in a light most favorable to the plaintiff. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). A court should grant the motion to dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994); *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir. 1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

A.   <u>The City's Motion to Dismiss</u>

To establish a claim under § 1983, the Uhurus must plead and prove three prongs: (1) that they have been deprived of a right secured by the United States Constitution or laws, (2) that the Defendants caused that deprivation under the color of state law, and (3) that the deprivation occurred without due process of law. *Scott v. Clay County*, 205 F.3d 867, 871 n.1 (6th Cir. 2000) (citing *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994)).

1.   *Claims Against the MPD and Individuals in Their Official Capacities*

The City argues that all claims against the MPD and against Director Godwin, Lt. McCord, Officer Grigsby, and Officer Gray, in their official capacities, should be dismissed because the City is the real party in interest and any claim against Director Godwin

and the officers in their official capacities is, in essence, a suit against the City. In their response, the Uhurus do not dispute that the relevant claims against the MPD, Lt. McCord, Officer Grigsby, and Officer Gray should be dismissed. They do, however, argue that Director Godwin may still be held liable in his official capacity as the director of the MPD under *Brandon v. Allen*, 645 F. Supp 1261, 1269 (W.D. Tenn. 1986), because he knew, or should have known, about the dangerous propensities of the officers.

It is clear that an official capacity suit is a suit against the governmental entity for all purposes. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245-46 (6th Cir. 1990) (holding that the plaintiff's suit against the Mayor and the Sheriff of Shelby County in their official capacities was "essentially and for all purposes[] a suit against the County itself"); *see also Alexander v. Beale Street Blues Co.*, 108 F. Supp. 2d 934, 947 (W.D. Tenn. 1999) (dismissing claims against the MPD because the City represented the real party in interest). This assertion is undisputed by the parties, except as to Director Godwin in his official capacity. The Uhurus' contention that Director Godwin may be held liable under *Brandon* is without merit. In *Brandon*, the governmental entity, also the City of Memphis, was not expressly named as a party to the lawsuit. *Brandon*, 645 F. Supp. at 1263. The court noted that any judgment in an official capacity suit is

"now deemed to be against the municipality rather than the individual." *Id.* All damages awarded to the plaintiff in *Brandon* that were attributable to actions of the defendant in his "official capacity" were ordered to be paid by the City of Memphis. *Id.* at 1264.

In the present case, the City is the real party in interest, and it has already been named as a defendant and served. It is unnecessary to sue the MPD, a division of the City, or any of the individuals in their official capacities because any judgment against them would be deemed as a judgment against the City. Accordingly, all of the Uhurus' claims against the MPD and Director Godwin, Lt. McCord, Officer Grigsby, and Officer Gray, in their official capacities, are dismissed.

    2.   *Section 1983 Claims Based on Respondeat Superior*

The City, citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), correctly asserts that a "municipality cannot be held liable for an injury caused by its agents or employees under § 1983 based on the doctrine of *respondeat superior*." (Def.'s Mem. 3.) The Uhurus agree with the City on this issue, and they further state that they "do not rely on the theory of *respondeat superior*." (Pls.' Resp. 7.) Therefore, the City's motion to dismiss § 1983 claims based on *respondeat superior* liability is granted because the Uhurus do not seek to establish liability on such a basis.

3. *Section 1983 Claims Based on Ratification*

The City argues that mere ratification of the conduct at issue in the complaint is not enough to satisfy "moving force" element required to establish a § 1983 violation. (Def.'s Mem. 4.) In opposition, the Uhurus claim that ratification of prior acts is an accepted means of establishing municipal liability under *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). Specifically, they contend that Director Godwin's knowledge of the officers' prior brutality and failure to subsequently discipline or terminate them would enable a jury to find that he effectively ratified their conduct, thereby causing the constitutional violations. (Pls.' Resp. 8.) In its reply, the City argues that the authority the Uhurus cite in *Praprotnik* is only meant to offer guidance in a situation where municipal policymakers delegate their policymaking authority. (Def.'s Reply 4-5.) The City points out that the Uhurus have not alleged that Director Godwin delegated any of his authority or affirmatively approved any of the officers' conduct. (Def.'s Reply 5.) Therefore, the City asserts that the Uhurus have failed to allege sufficient facts to where it could be found liable under any type of ratification doctrine. (Def.'s Reply 5.)

A municipality can only be held liable under § 1983 when the alleged offending actions occurred pursuant to an official municipal policy. *Monell*, 436 U.S. at 691. In order to find liability, the policy of the municipality must be the "moving

force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Ratification becomes involved in determining a municipality's policy only when "the authorized policymakers approve a subordinate's decision and the basis for it." *Praprotnik*, 485 U.S. at 127. In such a case, "the ratification would be chargeable to the municipality because [the authorized policymakers'] decision is final." *Id.* Ratification requires more than acquiescence – it requires affirmative approval of a *particular decision made by a subordinate. Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993). Ratification may only provide the means for determining that a policy is attributable to a municipality. Only if that policy is the "moving force" behind a constitutional violation will the municipality be held liable under § 1983. "Although ratification might tend to establish the existence of a policy of acquiescence that in itself was a 'moving force,' mere ratification of the conduct at issue by itself cannot legally suffice as a 'moving force.'" *Alexander*, 108 F. Supp. 2d at 949 (citing *Feliciano*, 988 F.2d at 656 n.6).

The Uhurus' reliance on *Praprotnik* to support their assertion that they have alleged facts sufficient to show that Director Godwin's ratification of the officers' prior actions caused the alleged constitutional violations underlying their § 1983 claim is misplaced. *Praprotnik* shows how ratification may aid in determining that an effective policy is chargeable to a

municipality.  Here, there is no allegation in the complaint that Director Godwin delegated decision-making authority to the individual officers named as defendants, and the complaint does not allege that Director Godwin affirmatively approved the alleged conduct of the individual officers.  Accordingly, the Uhurus' claims for liability based upon ratification are dismissed.[1]

4.  *Section 1983 Claims Based on the Eighth Amendment*

The City argues that the Uhurus' claims under the Eighth Amendment cannot stand because there has been no conviction. (Def.'s Mem. 4-5.)  The Uhurus do not dispute this in their response, and, in fact, state that all criminal charges against them were dismissed.  The Eighth Amendment's ban against cruel and unusual punishment does not apply "until after conviction and sentence."  *Graham v. Conner*, 490 U.S. 386, 393 n.6 (1989). Because the Uhurus were never convicted or sentenced for any crime, the Eighth Amendment is inapplicable.  To the extent the complaint asserts a § 1983 action for Eighth Amendment violations, those claims are dismissed as well.

---

[1]     In the Uhurus response to the motion to dismiss, they appear to equate the city's failure to act in various ways with ratification of violent acts in their response to the motion to dismiss.  Thus, for clarification, the court notes that its ruling dismissing the Uhurus' claims based on ratification does not dismiss claims based on a policy of deliberate indifference that is attributable to the City and that these claims are addressed in Section 5, *infra*.

5. *Section 1983 Claims Based on the Fourteenth Amendment*

In their complaint, the Uhurus allege that they were deprived of their rights under only the Eighth and Fourteenth Amendments. (Compl. ¶ 34.) As previously discussed, the Uhurus' claims under the Eighth Amendment for cruel and unusual punishment are dismissed. The Fourteenth Amendment provides in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1. The Uhurus claim that they were deprived of their freedom from unlawful seizure, from use of unjustified and excessive force, from deprivation of liberty without due process, and from cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. (Compl. ¶ 34.) The City argues that the Uhurus' claims under the Fourteenth Amendment must also be dismissed because claims of use of excessive force during a seizure must be analyzed under the more particularized Fourth Amendment "reasonableness" standard rather then the generalized notion of "substantive due process" under the Fourteenth Amendment, and that all § 1983 claims should be dismissed because the Uhurus have not alleged a violation of the Fourth Amendment.

The Fourth Amendment provides:

The right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The Fourth Amendment applies to "seized" individuals and prohibits the use of unreasonable force. A use-of-force claim may also lie under the substantive due process clause of the Fourteenth Amendment if there was a deprivation of "liberty without due process of law" under the Fourteenth Amendment. *Johnson v. Glick*, 481 F.2d 1028, 1032-33 (1973). The Supreme Court has "always been reluctant to expand the concept of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Because of its reluctance, the Supreme Court in *Graham v. Conner*, 490 U.S. 386, 395 (1989), held that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth Amendment, the claim must be analyzed under the standard appropriate to that specific provision and not under the more general rubric of substantive due process. *Accord Albright v. Oliver*, 510 U.S. 266, 271 (1994). In other words, a substantive due process claim under the Fourteenth Amendment will only lie if the Fourth Amendment does not apply. *See Graham*, 490 U.S. at 394-95. As a general rule, if the use of force constitutes a "seizure" within the meaning of the Fourth Amendment, the constitutional claim should be analyzed under the Fourth Amendment

and not under the substantive due process clause of the Fourteenth Amendment. *Id.; Chapman v. Higbee Co.*, 256 F.3d 416, 425 n.10 (6th Cir. 2001) (stating that "[a]n unreasonable search or seizure is a violation of the Fourth Amendment").

If the claim arises under the Fourth Amendment, an objective "reasonableness" standard applies in determining whether there was a deprivation of a constitutional right. *Lewis*, 523 U.S. at 843; *Graham*, 490 U.S. at 395. If the claim is a substantive due process claim under the Fourteenth Amendment, the defendant is liable only if he or she acted in a manner which "shocks the conscience." *Scott v. Clay County*, 205 F.3d 867, 875-76 (6th Cir. 2000). "The Supreme Court has made it clear that a Fourth Amendment claim of unreasonable search and seizure . . . must be analyzed under the reasonableness standard, not the 'shocks the conscience' standard." *Chapman*, 256 F.3d at 425 n.10 (citing *United States. v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

To determine that a claim challenging the use of force by an officer during an investigation or arrest arises under the Fourth Amendment, the court must ascertain that a "seizure" occurred. *Graham*, 490 U.S. at 388, 394-95. The Supreme Court has defined a seizure as occurring "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968); *see also Graham* 490 U.S. at 395; *United States v. Brignoni-Ponce*, 422 U.S.

873, 878 (1975) ("Whenever an officer . . . restrains [an individual's] freedom to walk away, he has seized that person")(citations omitted).

In the present case, the Uhurus have made sufficient allegations that they were "seized" as that term is defined by the Fourth Amendment. In the complaint, the Uhurus allege that they were attacked by the officers; Mr. Uhuru alleges he was choked, punched, and thrown to the ground by the officers; they both allege they were pepper-sprayed; Mrs. Uhuru alleges that some of her hair braids were ripped out by an officer; and they allege that they both were detained, held in custody for two and a half hours, and eventually transported to the Shelby County Jail and/or other detention or medical facilities. Assuming the truth of these allegations, which the court must do in considering a motion to dismiss, these actions on the part of the officers constitute a seizure. Because the complaint sufficiently alleges that Uhurus were seized, the Uhurus' excessive force and seizure claims must be analyzed under the Fourth Amendment. Therefore, the Uhurus' substantive due process claims under the Fourteenth Amendment are dismissed.

The Uhurus have failed to specifically and expressly allege a violation of the Fourth Amendment in their complaint. The complaint, however, as set out above, refers to an "unlawful seizure of their person" and "the use of unjustified and excessive

14

force" in the sections entitled "<u>First Cause of Action - City of Memphis</u>" and "<u>Second Cause of Action - Memphis Police Department</u>." (Compl. ¶¶ 34, 39.) Construing the complaint liberally, this court finds the two references to an "unlawful seizure of the person" and "use of unjustified and excessive force" support an allegation of a Fourth Amendment violation against the City and will treat the complaint as alleging a Fourth Amendment violation against the City.[2]

The court must then determine whether the Uhurus have alleged facts sufficient to show that the officers' actions were unreasonable in violation of the Fourth Amendment. In *Graham*, the Supreme Court articulated a balancing test to help define whether the force used is reasonable under the Fourth Amendment:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake . . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2]

---

[2] The court also notes that the City, in other cases, has been willing to assume that a complaint, when construed liberally, can assert a cause of action not explicitly referenced to a statute or constitutional amendment. *See* Mem. in Supp. of Mot. to Dismiss at 2, *Phebus v. City of Memphis,* et al., Case No. 2:08-cv-02314-dkv, Doc. No. 10-2 (W.D. Tenn July 23, 2008) (noting the lack of specific allegations in the complaint and saying "it is again assumed that the Plaintiff is seeking relief pursuant to the Fourth Amendment to the Constitution").

> whether the suspect poses an immediate threat to the
> safety of the officers or others, and [3] whether he is
> actively resisting arrest or attempting to evade arrest
> by flight.

*Graham*, 490 U.S. at 396 (citations omitted)(internal quotation marks omitted). Further, the Supreme Court reminds us that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and that "the question [a court must answer] is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (citations omitted).

Applying the Supreme Court's balancing test and assuming the allegations in the complaint to be true, the court concludes that the Uhurus have set forth sufficient factual allegations to make out a claim that the officers' actions were unreasonable. Here, the officers were checking the identification of two individuals in front of the Uhurus' store. Under these circumstances, it is reasonable to assume that the officers may ask the Uhurus to stand back so that they could conduct their investigation free of any interference. It is also reasonable to assume that if the Uhurus were not compliant with the officers' requests that they may be placed in custody to ensure the officers' safety and allow them to conduct their investigation. The complaint, however, alleges that the officers went far beyond simply placing the Uhurus in custody.

16

The complaint states that the officers attacked Mr. Uhuru from behind, slammed him to the ground, pepper-sprayed and punched both him and Mrs. Uhuru, and ripped out Mrs. Uhuru's hair braids. While it is important for civilians to comply with official requests from officers of the law, there is no indication that any non-compliance by the Uhurus in this case was so severe as to warrant the extent of force used. Further, there is no indication that the Uhurus were armed, in any way threatening the immediate safety of the officers, resisting arrest, or attempting to flee the scene. If the court assumes for the purposes of this motion that these facts are true, then the Uhurus have alleged facts which adequately state a claim that the officers violated their Fourth Amendment rights by use of excessive force.

Once the Uhurus have identified a constitutional right allegedly violated, here, the Fourth Amendment, the second element of a § 1983 action requires them to allege that the Defendants acted under color of state law. The complaint clearly alleges that the individual defendants - Lt. McCord, Officer Grigsby, and Officer Gray - acted under color of law when they arrested the Uhurus. (Compl. ¶¶ 52, 57, 62.) To plead a § 1983 claim against a municipality, all a plaintiff need allege is "that agents of the municipality, wile acting under color of state law, violated the plaintiff's constitutional rights, and that a municipal policy or policy of inaction was the moving force behind the violation."

*Alexander*, 108 F. Supp. at 949.  The Supreme Court has rejected any heightened pleading standard in municipal liability cases. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1990).  In so doing, the Supreme Court observed:

> We think that it is impossible to square the "heightened pleading standard" applied by the Fifth Circuit in this case with the liberal system of "notice pleading" set up by the Federal Rules.  Rule 8(a)(2) requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), we said in effect that the Rule meant what it said: "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Id.*, at 47, 78 S.Ct., at 103 (footnote omitted).

*Id.* at 168.

The complaint alleges that the MPD and Director Godwin, in his official capacity, which thereby implicates the City, encouraged, tolerated, and ratified an official pattern, custom, and practice of failing to adequately train, supervise, investigate, discipline, or screen applicants and officers of the MPD, which, according to the Uhurus, "amounts to deliberate indifference to the Constitutional rights of the Plaintiffs."  (Compl. ¶¶ 41-43, 46-48.)  As determined above, the complaint alleges a deprivation of the Fourth Amendment's protection against unreasonable searches and seizures against the City.  These allegations are sufficient to

satisfy Rule 8's notice pleading requirement and to survive a Rule 12(b)(6) challenge.

The final element of a Fourth Amendment claim requires that the deprivation of the constitutional right occur without due process of law. Due process guarantees that deliberate decisions of government officials to deprive individuals of life, liberty, or property, regardless of the fairness of any procedures used, do not result in governmental power being used for purposes of oppression. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986). In the present case, the officers were not acting pursuant to any type of warrant. Even if they followed accepted procedures in arresting the Uhurus, no procedure can authorize the officers to go beyond the protections of the Fourth Amendment and use excessive force. As noted above, the Uhurus have made sufficient factual allegations to support a claim of excessive force under the Fourth Amendment which satisfies the "without due process" prong as well. Accordingly, the Uhurus' complaint adequately pleads a § 1983 claim based on the Fourth Amendment.

6.  *Claims Under Tennessee Law for Aggravated Assault and False Imprisonment*

The City argues that it is not clear whether the Uhurus are asserting state law claims of false imprisonment and aggravated assault against it. In support of this assertion, the City correctly points out that the complaint fails to even mention the Tennessee Governmental Tort Liability Act ("GTLA") or state that

jurisdiction for any state law claims exists pursuant to the court's supplemental jurisdiction under 42 U.S.C. § 1367. The City contends, however, that even assuming that the complaint does allege claims under the GTLA, those claims should be dismissed for three alternative reasons.

Under the headings "<u>First Cause of Action - City of Memphis</u>" and "<u>Second Cause of Action - Memphis Police Department</u>," the complaint alleges "that the Defendants in their capacity as City of Memphis employees committed the acts of false imprisonment and aggravated assault in violation of Tennessee law." (Compl. ¶¶ 35, 40.) Construing the complaint liberally, it can be assumed that the false imprisonment and aggravated assault claims are being brought against the City under the GTLA because "[t]he [GTLA] is the exclusive state-law tort remedy against a Tennessee municipality." *Black v. City of Memphis*, No. 98-6508, 2000 U.S. App. LEXIS 11808, at *12 (6th Cir. May 19, 2000)(citation omitted). In interpreting the complaint as alleging state law claims against the City under GTLA, the court notes that "no Tennessee authority requires the statute to be expressly cited within the body of the complaint." *Id.* at *13-14 (finding it error to dismiss a plaintiff's state law claims on the basis that there was no express citation to the GTLA). Having found that the complaint sufficiently alleges state law claims against the City under the GTLA, the court will now address the City's arguments that those

claims should be dismissed.

a.    Failure to Comply with Notice Requirements of GTLA

The City first argues that the Uhurus' state law claims should be dismissed because they have "failed to affirmatively plead the City's waiver of immunity pursuant to the GTLA or to even mention the GTLA in their Complaint." (Def.'s Mem. 7.)  In making this assertion, the City directs the court to a provision of GTLA which provides that "[f]ailure to comply fully with the notice requirements of this chapter shall be a valid and complete defense to any liability of a governmental entity which might otherwise exist by virtue of this chapter."[3]  *See* Tenn. Code Ann. § 29-20-303.

The courts in this district, interpreting Tennessee courts' rulings, have held that "the sovereign immunity provided for by the GTLA is a jurisdictional prerequisite rather than an affirmative defense that can be waived if not pled." *Alexander v. Beale Street Blues Co.*, 108 F. Supp. 2d 934, 948 (W.D. Tenn. 1999)(citing *City of Lavergne v. S. Silver, Inc.*, 872 S.W.2d 687, 690-91 (Tenn. Ct. App. 1993)); *see also Buckley v. City of Memphis*, No. 03-28774 DP, 2004 WL 953614, at *5 (W.D. Tenn. May 4, 2004)(finding that the

---

[3]  The primary notice requirements under Tenn. Code Ann. § 29-20-303 were repealed in 1987.  *See* Tenn. Code Ann. §§ 29-20-301 to -302, *repealed by* Pub. Acts 1987, ch. 405, § 7. Other than a failure to plead the City's waiver of immunity, the City points to no other notice requirement that the Uhurus have failed to abide by.

plaintiff was required to plead the City's waiver of immunity to establish jurisdiction in compliance with the GTLA).  When finding plaintiffs' complaints deficient under the pleading requirements of GTLA and Federal Rule of Civil Procedure 8(a), however, the courts in this district have routinely allowed plaintiffs to amend their complaints to comply with the jurisdictional pleading requirement. *See Alexander*, 108 F. Supp. 2d at 948 (granting plaintiff leave to amend complaint within ten days of order to comply with jurisdictional requirement); *Buckley*, 2004 WL 953614, at *5 (same). This end result conforms with other cases that have held that a plaintiff is not required to plead a municipality's waiver of immunity in the complaint in order to comply with the notice requirements of GTLA.  *See Chalmers v. Clemons*, 359 F. Supp. 2d 700, 702-03 (W.D. Tenn. 2005)(holding that pleading of waiver not required).  Therefore, taking into consideration the established precedent of not dismissing state tort claims against the City for failure to plead the City's waiver under GTLA, the court grants, under Federal Rule of Civil Procedure 15,[4] the Uhurus leave to amend their complaint within ten (10) days of the entry of this order to comply with the jurisdictional requirement, if necessary. Assuming that the Uhurus will avail themselves of the opportunity

---

[4]    Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).

to amend their complaint, the court now turns to the City's additional arguments that the claims for false imprisonment and aggravated assault should be dismissed.

> b.  Vicarious Liability for Aggravated Assault and False Imprisonment

The City argues that it cannot be held vicariously liable for false imprisonment and aggravated assault under GTLA.  It acknowledges that false imprisonment and aggravated assault are not listed in Tenn. Code Ann. § 29-20-205(2) as torts for which immunity has not been removed by GTLA.  It contends, however, that GTLA requires a plaintiff to set forth assertions of negligence on the part of a municipality in failing to prevent an employee's intentional acts in order for the municipality to be held liable for those acts.  Thus, the City contends that the Uhurus' claims of false imprisonment and aggravated assault should be dismissed because the Uhurus have not asserted negligence on the part of the City in failing to prevent those intentional acts.

Section 29-20-205 of GTLA provides in relevant part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
>
> (2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental

23

anguish, invasion of right of privacy or civil rights .
. . .

Tenn. Code Ann. § 29-20-205(1) and (2). Thus, GTLA removes or waives the City's immunity from suit for injury caused by a negligent act of a city employee except when the injury arises out of one of the specified torts enumerated in subsection (2) of Section 29-20-205. *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 82 (Tenn. 2001); *see also Hale v. Randolph*, No. 1:02-CV-334, 2004 WL 1854179, at *16 (E.D. Tenn. Jan. 30, 2004). The Supreme Court of Tennessee has held that because the torts of assault and battery are conspicuously absent from the intentional tort exception of GTLA rendering governmental entities immune from liability for injuries, "the clearly negligent defendant is not immune under this exception." *Limbaugh,* 59 S.W.3d at 82.

Other courts have applied the same rationale to liability of the City arising out of claims for false imprisonment. *See Elmore v. Cruz*, No. E200-03136-COA-R3-CV, 2003 WL 239169, *4 (Tenn. Ct. App. Feb. 4, 2003); *Hale v. Randolph*, No. 1:02-CV-334, 2004 WL 1854179, at *16 (E.D. Tenn. Jan. 30, 2004). Subsection (2) provides immunity of the City from suit for injuries arising out of "false imprisonment pursuant to a mittimus from a court." Tenn. Code Ann. § 29-20-205(2). It does not retain immunity from suit arising out all false imprisonments but is expressly limited to those pursuant to a mittimus from a court. In the current cause of action there is no allegation of imprisonment from a mittimus from

24

a court; therefore, the City has not pursued a claim for immunity under GTLA for the false imprisonment claim.

Even though the City has not retained immunity under GTLA from suits for injuries arising out of false imprisonments or assault and battery, the City is correct in that "[a]n action against the City under the GTLA . . . must be an action for negligence." *Chalmers*, 359 F.Supp.2d at 703 (citing *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 82 (Tenn. 2001)). "Later decisions applying the ruling in *Limbaugh* affirm that the GTLA does not allow plaintiffs to hold governmental entities vicariously liable for intentional torts not exempted under section 29-20-205(2), but rather requires a direct showing of negligence on the part of the governmental entity." *Pendleton v. Metro. Gov't of Nashville & Davidson County*, No. M2004-01910-COA-R3-CV, 2005 Tenn. App. LEXIS 558 at *10 (Tenn. Ct. App. Sept. 1, 2005). It is well settled that under Tennessee law false imprisonment and aggravated assault are intentional torts. *See Pendleton,* 2005 Tenn. App. LEXIS 558 at *1 n.1 (Tenn. Ct. App. Sept. 1, 2005); *Hale v. Randolph*, No. 1:02-CV-334, 2004 WL 1854179, at *16 (E.D. Tenn. Jan. 30, 2004). Therefore, the Uhurus are obligated to plead facts that could establish the elements of a negligence claim against the City. *Id.* For the Uhurus to succeed in holding the City liable for the "intentional torts of false imprisonment and assault and battery allegedly committed by [the officers, they are] required to prove

that an independent act of negligence by the City or a City employee proximately caused the intentional torts that resulted in [their] injuries." *Id.* (citing *Baines v. Wilson County*, 86 S.W.3d 575, 580-81 (Tenn. Ct. App. 2002)). Courts have dismissed claims similar to ones the Uhurus assert when plaintiffs have failed to allege, or ultimately prove, that a city was negligent in hiring, training, retaining, supervising, and/or disciplining officers that caused the plaintiffs' injuries. *See Chalmers*, 359 F. Supp. 2d at 703 (dismissing battery claim because plaintiff did not allege that the city was negligent in hiring, training, retaining, supervising, or disciplining the allegedly offending officer); *Hale*, 2004 WL 1854179, at *17 (dismissing for lack of proof of same).

Here, the Uhurus have not alleged any state law claim of common law negligence in their complaint against the City, the MPD, or Director Godwin. Rather, the Uhurus have alleged that the MPD and Director Godwin in his official capacity failed to adequately train MPD officers, screen applicants, and investigate and discipline MPD officers in violation of 42 U.S.C. § 1983. (Compl. ¶¶ 41, 46.) These allegations are not sufficient to state a common law negligence claim against the City under GTLA. Accordingly, the motion to dismiss the Uhurus' state law claims against the City is granted.[5]

---

[5] There is an alternative basis for dismissal of state law claims, including, specifically, the claims of false imprisonment and aggravated assault against the City. Immunity of municipalities

c. The Discretionary Function Exception to GTLA

The City next argues that it is immune from tort liability under GTLA under Tenn. Code Ann. 29-20-205(1), the discretionary function exception. The City contends that to the extent the plaintiffs allege in their complaint that the City, the MPD and

---

under GTLA is not removed when an action arises out of civil rights. The torts of false imprisonment and assault are alleged to have been committed solely in the context of the Uhurus being attacked and arrested by the defendant officers. The Uhurus claim that the officers' actions violated their civil rights, i.e., their freedom from unlawful seizure and use of excessive force. The Uhurus claims are brought in federal court under § 1983, which is contained in the Civil Rights chapter of the United States Code, and thus, this is invariably a civil rights case. *See* 42 U.S.C. § 1983.

GTLA provides that "[i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of . . . civil rights." Tenn. Code Ann. § 29-20-205(2). Other courts have found that the term "civil rights" in Tenn. Code Ann. § 29-20-205(2) includes claims arising under the civil rights laws contained in § 1983. *Hale*, 2004 WL 1854179, at *17. Because Tenn. Code Ann. § 29-20-205(2) is generally understood to restore immunity for certain intentional torts, civil rights claims must be considered a type of intentional tort for purposes of GTLA. *See Brooks v. Sevier County*, 279 F. Supp. 2d 954, 960 (E.D. Tenn. 2003). As discussed previously, an action against a municipality under GTLA must be one for negligence, not one for an intentional tort. Therefore, the claims that the City failed to adequately train, screen, investigate, or discipline its officers are essentially allegations seeking to hold the city liable for the intentional violations of the Uhurus' civil rights. The City is immune from liability for such intentional torts under the GTLA.

The Uhurus' tort claims of false imprisonment and assault against the City under the GTLA are based upon the alleged violation of their civil rights by the defendant officers. Because they assert their false imprisonment and aggravated assault claims against the City in the context of a civil rights case, the alleged injuries must necessarily arise out of "civil rights." The City is entitled to immunity from suit on these claims pursuant to the "civil rights" exception in Tenn. Code Ann. § 29-20-205(2).

Director Godwin failed to adequately train, screen, investigate, or discipline its officers, these are all discretionary functions for which the City has not waived immunity.

"The discretionary functions exception 'recognizes that courts are ill-equipped to investigate and balance the numerous factors that go into an executive or legislative decision' and therefore allows the government to operate without under interference by the Court." *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 431 (Tenn. 1992)(citation omitted). Basically, the discretionary function exception "prevents the use of tort actions to second-guess what are essentially legislative or administrative decisions." *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 85 (Tenn. 2001)). In *Bowers*, the Supreme Court of Tennessee adopted the "planning-operational" test to determine if the discretionary function exception applied. Under the "planning-operational" test,

> [d]ecisions that rise to the level of planning or policy-making are considered to be discretionary acts requiring judicial restraint and are, therefore, not subject to tort liability. On the other hand, decisions that merely implement pre-existing policies and regulations are considered to be operational in nature and require the decision-maker to act reasonably in implementing the established policy.

*Id.*

The complaint alleges that the Director Godwin and the MPD failed to adequately screen, train, investigate, and discipline its officer defendants but fails to allege the MPD and Director Godwin failed to follow any particular rules or regulations in doing so.

The charges in the complaint against Director Godwin and supervisory officials of the MPD are based on supervisory responsibilities and are inherently discretionary in nature. The complaint further alleges that these acts and omissions rose to the level of official policy and customs of the MPD. The complaint fails to allege any facts to support a finding that these actions were routine, operational functions. The court finds that the factual allegations in the complaint are not sufficient under the *Bell* standard to raise more than a speculation that the actions of the City of which the Uhurus complain are not discretionary functions subject to immunity. Accordingly, the City's motion to dismiss the plaintiffs' state law claims against the City is granted.

    7.   *Punitive Damages*

Both parties agree that the City is immune from punitive damages under § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Punitive damages are not available against the City under GTLA because the action against the City must be one of negligence, and punitive damages are not recoverable for negligence. *Tipton County Bd. Of Educ. v. Dennis*, 561 S.W.2d 148, 152-53 (Tenn. 1978). In addition, all state law claims against the City have been dismissed. Accordingly, the Uhurus' claim for punitive damages against the City is dismissed.

B.    Godwin's Motion to Dismiss

Director Godwin has moved to dismiss all claims against him in his individual capacity pursuant to Rule 12(b)(6) for failure to state a claim because he is entitled to qualified immunity in his individual capacity for discretionary functions.  In opposition, the Uhurus argue that Director Godwin in his memorandum of law in support of his motion to dismiss has failed to state any facts to establish that he was performing discretionary functions.  They assert that without alleging such facts, Director Godwin cannot establish that he was acting within the scope of his discretionary authority when the challenged conduct occurred, as required for qualified immunity.

The doctrine of qualified immunity for government officials was articulated in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  In *Harlow*, the Supreme Court held:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow*, 457 U.S. at 818.  The question "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Anderson v. Creighten*, 483 U.S. 635, 639

(1987)(citations omitted).  In order to strip a government official

of any entitled qualified immunity, a plaintiff must first show

that the official violated a constitutionally protected right.

*Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002).  Once that

is shown, the second step is to "determine whether the right is so

'clearly established' that a 'reasonable official would understand

that what he is doing violates that right.'"  *Brennan v. Township*

*of Northville*, 78 F.3d 1152, 1154 (6th Cir. 1996)(quoting *Anderson*,

483 U.S. at 640).

Although qualified immunity is an affirmative defense that

must be pleaded by the public official, the public official can put

it at issue before a formal answer is filed by means of a motion to

dismiss.  Thus, a defendant can "properly challenge the sufficiency

of the complaint under F.R.C.P. 12(b)(6) on the basis that he was

entitled to qualified immunity because the facts pleaded would not

show that his conduct violated clearly established law of which a

reasonable person should have know at the time."  *Dominque v. Telb*,

831 F.2d 673, 677 (6th Cir. 1987).  The Sixth Circuit has held that

"a plaintiff seeking damages against a government official in his

individual capacity for an act committed under color of law should

'normally include in his original complaint all of the factual

allegations necessary to sustain a conclusion that defendant

violated clearly established law.'" *Id.* at 676.  If the complaint

fails to allege the violation of a clearly established

constitutional right, the defendant should be entitled to qualified immunity on a motion to dismiss. *Siegert v. Gilley*, 500 U.S. 226, 232-33 (1991).

In order to evaluate Director Godwin's claim of qualified immunity on a motion to dismiss, the court must first determine what claims the Uhurus have brought against Director Godwin in his individual capacity. In the "Factual Allegations" section, the complaint alleges:

> 29. Upon information and belief, Defendant Larry Godwin and other supervisory officials in the Memphis Police Department knew of the previous acts of [the defendant officers] and allowed them to continue their brutal and illegal activities while acting under the color of law and as employees of the Memphis Police Department.

(Compl. ¶ 29.) It also alleges in the same section that "the failure of Defendant Larry Godwin to remove Lt. McCord, Officer Grigsby, and Officer Gray from the Memphis Police Department is gross negligence and evidences a deliberate indifference on their [sic] part for the welfare of the plaintiffs and all the citizens of Memphis." (Compl. ¶¶ 30, 31.) Under the heading "Third Cause of Action - Larry Godwin Individually and in his Official Capacity a Director of the Memphis Police Department," the complaint alleges:

> that the Defendant Larry Godwin permitted, encouraged, tolerated and ratified an official pattern, custom and practice by his deputy jailers, knowing that said practice violated Plaintiff's free exercise and enjoyment of rights and privileges secured to the by the Constitution . . . . in violation of 42 U.S.C. § 1983, in that: (b) Defendant Larry Godwin knew, or should have

32

known through reasonable care, that the . . . officers engaged in a pattern of illegal conduct; (c) Defendant Larry Godwin and the Memphis Police Department failed to adequately train its police officers . . . ; (d) Defendant Larry Godwin and the Memphis Police Department failed to exercise due diligence in failing to adequately screen applicants . . . ; and (e) Defendant Larry Godwin and the Memphis Police Department failed to adequately investigate and discipline the Defendant police officers . . . .

(Compl. ¶ 46.) Although the Uhurus' complaint is not entirely clear, liberally construed, it asserts a claim against Director Godwin, in his individual capacity, under § 1983, based on supervisory liability, for failure to adequately screen, train, investigate, and/or discipline MPD officers. (Compl. ¶ 46.) In order for individual liability to attach to Director Godwin for the actions of the other defendant officers, the Uhurus must show that he "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)(citations omitted).

As previously stated, the Uhurus have alleged in a general, conclusory fashion in their complaint a constitutional violation by the defendant officers relating to the Fourth Amendment without even explicitly mentioning the Fourth Amendment. The contours of the Fourth Amendment's protection from unlawful seizure and use excessive force have been clearly defined by the Supreme Court. However, the Uhurus have failed to allege a violation of any specific constitutional right by Director Godwin. The Uhurus did not have a constitutional right to have Director Godwin fire Lt.

33

McCord, Officer Grisby, and Officer Gray. At best, the factual allegations that "Director Godwin knew or should have known" of illegal activities of the defendant officers is speculative and not sufficient to state a claim under the *Bell* standard against Director Godwin personally for the constitutional violations allegedly committed by Lt. McCord, Officer Grisby, and Officer Gray as a result. Accordingly, the court grants Director Godwin's motion to dismiss in his individual capacity.

### III.  CONCLUSION

For the reasons above, the court rules as follows:

(1) The City's motion to dismiss all claims against the MPD and Director Godwin, Lt. McCord, Officer Grigsby, and Officer Gray, in their official capacities, is GRANTED.

(2) The City's motion to dismiss § 1983 claims against it based on *respondeat superior* is GRANTED.

(3) The City's motion to dismiss § 1983 claims against it based upon ratification of the defendant officers' actions is GRANTED.

(4) The City's motion to dismiss § 1983 claims against it based on violation of the Eighth Amendment is GRANTED.

(5) The City's motion to dismiss § 1983 claims against it based on violation of the Fourteenth Amendment claims is GRANTED, but the City's motion to dismiss all § 1983 claims against it is DENIED. A § 1983 claim against the City under the Fourth Amendment

34

still remains.

(6) The City's motion to dismiss all the Uhurus' state law claims against it, specifically including false imprisonment and aggravated assault, is GRANTED.

(7) The City's motion to dismiss all claims against it for punitive damages is GRANTED.

(8) Director Godwin's motion to dismiss all claims against him in his individual capacity is GRANTED.

IT IS SO ORDERED this 17th day of October, 2008.


 s/ Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE